The United States, Appellants, *v.* Edward Simon.

In 1791 Miro granted an order of survey for some land in Louisiana.
During the ten years that the province remained in the hands of Spain, the grantee neither had a survey, nor took possession, nor did any other act showing an intention of fulfilling the conditions upon which the grant was made.
The regulations of Morales required parties so situated to have their titles made out. In case of neglect the Spanish government was under no obligation to grant the land, and therefore the claim is not good against the United States.

This was an appeal from the District Court of the United States for the Eastern District of Louisiana.

The case arose under the acts of 1824 and 1844, and was decided by the District Court in favor of the petitioner. The circumstances are stated in the opinion of the court.

It was argued by *Mr. Crittenden,* (Attorney-General,) for the United States. No counsel appeared for the appellee.

Mr. Justice GRIER delivered the opinion of the court.

Edward Simon, the plaintiff below, filed his petition in the District Court of Louisiana, praying the confirmation of his title to a tract of land on the bayou Sans Façon or Huffpower, containing six thousand four hundred arpens. He claimed by various mesne conveyances through Stephen Flores, who on the 11th of November, 1791, petitioned Governor Miro for a grant of eighty arpens front on each side of said bayou; the petitioner being "desirous," as he states, "of establishing himself in the post of Opelousas." On the 20th of November, 1791, Governor Miro issued an order to Don Carlos Trudeau to establish the petitioner on the land for which he prays, in the usual form.

The pleadings in this case do not allege, nor is there any evidence to prove, that Stephen Flores ever " established himself at the post of Opelousas," or took possession of the land which he desired to have, or obtained a survey thereof, or did any other act showing an intention of fulfilling the known conditions by which such gratuitous concessions could be converted from an inchoate into a complete title. In March, 1820, more than thirty years after its date, the order of survey is transferred by a person calling himself Stephen Flores to John Thompson. In 1825 John Thompson filed his claim with the register; but no action was taken on it, as its genuineness was doubted. In 1836 it was again submitted by the present petitioner to the register and receiver of Opelousas, under the act of 1835, and afterwards reported against by the Solicitor of the General Land-Office, because of " no inhabitation, no cultivation, no possession."

The land supposed to be described in this order of survey has been all, long since, surveyed and sold by the United States. During the twelve or thirteen years that the Province of Louisiana was in possession of Spain and France, Flores showed no desire of complying with the conditions of his grant, in any way, or of obtaining a title for the land offered to him by this order of survey. For twenty years after the land passed to the United States, and after officers were appointed to receive and report claims for confirmation, no act is done to show that this mere equitable inchoate claim was not wholly abandoned. After a neglect of ten years and more to obtain a survey, to settle or improve the land or take possession of it, the Spanish government was under no obligation, equitable or moral, to grant this land to Flores. As was said by this court in the case of United States v. Boisdore, (11 How. 96) " The policy of Spain was to make gratuitous grants for the purposes of settlement and inhabitation, and not for those of mere speculation. The grantee might have his land surveyed or might decline; he might establish himself on the land or decline; these acts rested wholly in his discretion. But if he failed to take possession and establish himself he had no claim to a title; his concession or first decree in such case had no operation."

The regulations of Morales of 1799, sections 18, 19, 20, 21, and 22, warn those " who have merely asked for land," or " obtained the first decree by which the surveyor is ordered to measure it and put them in possession," from indulging the notion that they have any title to it, and peremptorily require that they should come forward and have their titles made out within six months. But, although we may believe that these conditions were not rigidly exacted, there is no reason to suppose that per-

sons who have neglected to take possession, improve or survey the lands, which they have requested to be given them, for ten, twenty, or thirty years, can have any just claim on the government for such lands, or to receive others in place of them. Such laches is conclusive evidence of abandonment, if not of their total want of genuineness. But certainly no court of equity can be required to enforce the specific execution of inchoate grants or contracts made without consideration, which have been buried for half a century, and are now exhumed merely for purposes of speculation.

The decree of the District Court is thereiore reversed and record remitted, with directions to dismiss the bill or petition of the plaintiff below.

### Order.

This cause came on to be heard on the transcript of the record from the District Court of the United States for the Eastern District of Louisiana, and was argued by counsel. On consideration whereof, it is the opinion of this court that the grant is null and void. Whereupon, it is now here ordered, adjudged and decreed by this court, that the decree of the said District Court in this cause be, and the same is hereby, reversed and annulled, and that this cause be, and the same is hereby, remanded to the said District Court, with directions to dismiss the petition of the claimant.